O

# United States District Court
# Central District of California

| | |
|---|---|
| WIXEN MUSIC UK LTD., <br><br> Plaintiffs, <br><br> v. <br><br> TRANSPARENCE ENTERTAINMENT GROUP INC., et al., <br><br> Defendants. | Case № 2:21-cv-02663-ODW (MRWx) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [16]** |

## I.  INTRODUCTION

On March 26, 2021, Plaintiff Wixen Music UK brought this action against Defendants Transparence Entertainment Group, Inc. ("TEG"), TEG officers Dennis Dreith and Shari Hoffman, and former Wixen employee Tania Oliveira, primarily alleging Defendants misappropriated its trade secrets.  (Compl. 1, ECF No. 1.) Defendants now move to dismiss this action for lack of personal jurisdiction, forum non conveniens, and failure to state a claim.  (Mot. Dismiss ("Mot." or "Motion"), ECF No. 16.)  The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

For purposes of Defendants' Rule 12(b)(6) Motion, the Court takes all of Wixen's well-pleaded allegations as true. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). The Court also refers to these allegations in determining whether it has personal jurisdiction over Oliveira, though in that context, the allegations may be controverted by a presentation of evidence. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

Wixen is a U.K. corporation that administers music copyrights and collects royalties earned by its clients' recordings, which are known as "neighboring rights" royalties. (Compl. ¶ 13.) Wixen's clients include musicians, vocalists, producers, and others involved in creating recordings. (*Id.*)

TEG is a California corporation. (*Id.* ¶ 14.) Like Wixen, TEG also administers and collects neighboring rights royalties. (*Id.* ¶ 2.) Dreith and Hoffman are TEG officers who reside in California. (*Id.* ¶ 3, 4.) Oliveira is a London, U.K. resident and former Wixen employee who now works for TEG. (Decl. Tania Oliveira ("Oliveira Decl.") ¶¶ 2, 8, ECF No. 16-1.)

Oliveira began working for Wixen at the end of 2019. (Compl. ¶ 17.) As a condition of her employment, Oliveira agreed to retain Wixen's "confidential and proprietary information and trade secrets" in strict confidence. (*Id.*) These trade secrets include the names, contact information, and incomes of Wixen's clients, contract amounts and expiration dates, Wixen's methodology for collecting neighboring rights, Wixen employee salaries, and more. (*Id.* ¶ 18.) Wixen took measures to ensure the information remained confidential, such as requiring employees to sign confidentiality agreements and securing the information in password-protected repositories. (*Id.* ¶ 20.)

On October 29, 2020, while still employed by Wixen, Olivera entered into a non-disclosure agreement with California-based TEG, Dreith, and Hoffman (collectively, "TEG Defendants") in which Oliveira agreed to share certain

information including Wixen's trade secrets. (*Id.* ¶ 22.) On November 1, 2020, TEG entered into an additional consulting agreement with Oliveira. (*Id.* ¶ 23.) During the five months Oliveira worked for both Wixen (in the U.K.) and TEG (in California), she emailed herself and TEG Defendants Wixen-related information, including Wixen trade secrets, from her work computer. (*Id.* ¶ 25.) Moreover, during and after Oliveira's employment with Wixen, Oliveira contacted one or more of Wixen's clients using their non-public contact information found in Wixen's client list, for the purpose of soliciting business from those clients on behalf of TEG. (*Id.* ¶ 26.) As a result, TEG did in fact gain the business of certain Wixen clients. (*Id.*)

On February 1, 2021, Oliveira informed Wixen that she would resign effective March 12, 2021. (*Id.* ¶ 31.) Prior to resigning, Oliveira deleted several TEG-related emails from her work laptop, which Wixen later found in the computer's "Recycle Bin." (*Id.* ¶ 33.) The deleted emails show Oliveira shared confidential Wixen information with TEG. (*Id.*)

On March 26, 2021, Wixen filed a Complaint alleging: (1) trade secret misappropriation under federal law; (2) trade secret misappropriation under state law; (3) intentional interference with contractual relations; (4) intentional interference with economic relations; (5) unfair competition; and (6) conspiracy. (*Id.* ¶¶ 36–83.) Defendants now move to dismiss on three grounds: (1) the Court lacks personal jurisdiction as to Oliveira; (2) alternatively, Oliveira must be dismissed from the case under the doctrine of forum non conveniens; and (3) irrespective of whether Oliveira is dismissed on those grounds, failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6) as to all Defendants. (Mot. 3–15.) The matter is fully briefed. (*See Id.*; Pls.' Opp'n, ECF No. 18; Defs.' Reply, ECF No. 20.)

## III. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

For the following reasons, the Court finds it has personal jurisdiction over Oliveira and thus **DENIES** Defendants' Motion to dismiss Oliveira from this action.

### A. Legal Standard

Federal courts have the power to exercise personal jurisdiction to the extent permitted by the laws of the states in which they sit. Fed. R. Civ. P. 4(k)(1)(A). California's long-arm jurisdictional statute is coextensive with federal due-process requirements, namely, that a defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemp't Comp. & Placement*, 326 U.S. 310, 316 (1945); *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002).

When a party seeks dismissal under Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the exercise of personal jurisdiction is proper. *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007). When the motion to dismiss is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger*, 374 F.3d at 800 (internal quotations and citations omitted).

### B. Discussion

Personal jurisdiction may be general or specific. *Daimler AG v. Bauman*, 571 U.S. 117, 127–28 (2014). General jurisdiction exists when a foreign defendant's "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted). The parties do not dispute that the Court does not have general jurisdiction over Oliveira. (*See* Opp'n 5.) Thus, the issue is whether this Court may exercise specific jurisdiction over Oliveira.

The Ninth Circuit uses a three-prong test for establishing specific jurisdiction: (1) the non-resident defendant must purposefully direct activities or transactions with

the forum or purposefully avail him or herself of the benefits and protections of the forum's laws; (2) the claim must arise out of or relate to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice such that it is reasonable. *Schwarzenegger*, 374 F.3d at 802. "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* The burden then shifts to the defendant to "present a compelling case" that the third prong is not satisfied. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

### 1. First Prong: Purposeful Direction or Availment

The Court's specific jurisdiction analysis begins by considering whether Oliveira "purposefully directed" her conduct toward, or "purposefully availed" herself of the privileges of, California. *Schwarzenegger*, 374 F.3d at 802. Courts typically analyze contract disputes under the "purposeful availment" standard, and typically apply the "purposeful direction" standard to tort claims. *See id.* (explaining that purposeful availment and purposeful direction are "two distinct concepts"). However, the Ninth Circuit "often use[s] the phrase 'purposeful availment,' in shorthand fashion, to include both purposeful availment and purposeful direction." *Id.* And despite observing that the purposeful direction test is more appropriate for tort claims, the *Schwarzenegger* court nevertheless analyzed the tort claims at issue under both the purposeful direction and purposeful availment standards in determining specific jurisdiction. *Id.* at 802–803. This Court follows suit and assesses Wixen's claims under both standards.

#### a. Purposeful Direction

To establish purposeful direction, a plaintiff must show the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (citation omitted). The inquiry is "defendant-focused," meaning that "the relationship between the nonresident defendant, the forum, and the litigation must arise out of contacts that

the defendant *himself* creates with the forum state." *Id.* at 1068 (internal quotations and citation omitted, emphasis in original).

Here, Wixen fails to demonstrate the third prong: that Oliveira "[knew] that the harm caused would likely be suffered in California." *See Krypt, Inc. v. Ropaar LLC*, No. 19-cv-03226-BLF, 2020 WL 3639651, at *6 (N.D. Cal. July 6, 2020). To satisfy this element, a defendant's intentional act must have foreseeable effects in the forum. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1131 (9th Cir. 2010). Here, the harm arising from Oliveira's actions did not occur in California at all. This is because "a corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011). Thus, Wixen suffered economic harm in the U.K., not California. Wixen fails to allege or suggest it lost a California business opportunity (such as by losing a California client) or some other economic harm suffered in California that could satisfy this element. Wixen failed to satisfy the foreseeable harm requirement under the purposeful direction standard. The Court must therefore determine whether Wixen has met its burden under the purposeful availment standard.

### b. *Purposeful Availment*

To establish purposeful availment, a plaintiff must show the defendant "purposefully availed himself of the privilege of doing business in a forum state," which "typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. "By taking such actions, a defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Here, Oliveira entered into certain agreements with, and began working for, California-based TEG. (Compl. ¶¶ 22, 25; Oliveira Decl. ¶ 9.) As part of her work, Oliveira directed clients to TEG in California. (Decl. Sharon Wixen ("Wixen Decl.")

Ex. E, ECF No. 18-1.) Moreover, Wixen points to an email in which Oliveira appears to refer a Wixen client to Hoffman and Dreith and indicates that California-based TEG could pay clients in U.S. Dollars more quickly than could Wixen. (Wixen Decl. Ex. E.) The email demonstrates that Oliveira was aware that TEG was a California-based company when she was working for TEG. Oliveira therefore "availed [her]self of the privilege of doing business in the forum state," satisfying the first prong of the specific jurisdiction test. *Schwarzenegger*, 374 F.3d at 802.

### 2. Second Prong: Claims Arise from Forum-Related Activities

The court next assesses whether Wixen's claims "arise out of or result from" Oliveira's "forum-related activities." *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). "In the Supreme Court's phrasing, a plaintiff's claims must 'arise out of or relate to the defendant's contacts with the forum.'" *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 983 (9th Cir. 2021) (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). Here, Wixen's claims arise from Oliveira's relationship with California-based TEG, including the various communications Oliveira had with TEG and the trade secrets Oliveira sent TEG. Thus, the Court finds Wixen's claims arise from Oliveira's contacts with California, satisfying the second prong.

### 3. Third Prong: Fair Play and Substantial Justice

Once the plaintiff has satisfied the first two prongs, "the defendant must come forward with a compelling case that the exercise of jurisdiction would not be reasonable." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). In determining reasonableness, the Court looks to seven factors: "(1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an

alternative forum." *Freestream Aircraft (Berm.) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 607 (9th Cir. 2018). Here, although the second factor weighs against exercising jurisdiction, the remaining six factors all weigh in favor of reasonableness and therefore of exercising jurisdiction. Thus, as set forth below, the Court finds the exercise of jurisdiction to be reasonable.

### a. *Extent of Purposeful Interjection*

With regard to the first factor, the extent of the defendant's purposeful interjection into the forum state's affairs, Oliveira purposefully availed herself of the benefits and protections of California by doing business with California-based TEG. *See Ayla*, 11 F.4th at 983 ("The purposeful interjection factor in the reasonableness analysis is 'analogous to the purposeful direction' factor." (quoting *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988)). Oliveira's direct, intentional contact with California weighs in favor of reasonableness.

### b. *Burden of Defending in Forum State*

With regard to the second factor, Defendants argue that "it would be an extreme burden for Oliveira to be forced to litigate the pending action in the U.S." because Oliveira "is not wealthy, nor does she have the financial means to engage in a dispute with her former employer thousands of miles away from where she lives and works." (Mot. 7.) The Court agrees that forcing an individual defendant to defend an action overseas is a significant burden—particularly when such defendant has little to no history or familiarity with the forum state. Therefore, the Court finds that this factor weighs against exercising jurisdiction over Oliveira.

### c. *Extent of Conflict with Sovereignty of Defendant's State*

"[L]itigation against a foreign corporation creates a higher jurisdictional barrier than against a citizen from a sister state because important sovereignty concerns exist." *Ayla*, 11 F.4th at 984. Nevertheless, the *Ayla* court found that the resolution of the plaintiff's claims was unlikely to undermine Australian sovereignty because the plaintiff only sought determinations under U.S. trademark law and California unfair

competition law.  *Id.*  In this case, Wixen seeks a determination of Defendants' misappropriation only under U.S. federal and California state laws.  (*See generally* Compl.)  Accordingly, the resolution of this action in California is unlikely to impede on the U.K.'s sovereignty.

### d.     *California's Interest in Adjudicating the Dispute*

The primary connection this action has to California is that TEG is a California-based company and Oliveira did business in, and directed business to, California. Therefore, California has a significant interest in adjudicating this dispute.

### e.     *Efficient Judicial Resolution*

If the Court declines to exercise jurisdiction over Oliveira, the Court could continue to exercise jurisdiction over TEG, which could result in two parallel actions, asserting the same claims, resulting from the same acts, but in two separate countries. This Court exercising jurisdiction over Oliveira would lend to the most efficient judicial resolution of this action.  Thus, this factor weighs in favor of reasonableness.

### f.     *Importance of Forum to Relief; Existence of Alternative Forum*

Turning to the sixth factor—the importance of California courts to Wixen's interest in convenient and effective relief—the Court finds that this weighs somewhat in favor of reasonableness.  Wixen is a U.K. company suing a U.K.-based defendant for harm suffered in the U.K.  It appears Wixen could receive convenient relief by bringing this action in the U.K., which also impacts the seventh factor—existence of an alternative forum.  Nevertheless, California is better suited to resolve claims arising from California state and U.S. federal law, for a dispute stemming from business conducted in and directed to, California.  On balance, the Court finds that these factors weigh in favor of reasonableness.  Thus, exercising personal jurisdiction over Oliveira would comport with fair play and substantial justice.  *Dole Food*, 303 F.3d at 1110. The Court finds that exercising personal jurisdiction over Oliveira would be appropriate.  Accordingly, the Court **DENIES** Defendants' Motion to dismiss Oliveira from the action for lack of personal jurisdiction.

## IV. MOTION TO DISMISS FOR FORUM NON CONVENIENS

The Court now addresses Defendants' argument that Oliveira should be dismissed for forum non conveniens because Oliveira's employment agreement with Wixen has a governing law provision remitting the parties to the courts of England and Wales. (Mot. 6.)

"A district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001). In determining whether to dismiss an action on a forum non conveniens basis, courts look to: "(1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal." *Id.* The Ninth Circuit has also held that "a district court must make a choice of law determination in considering whether to dismiss the action." *Id.* at 1143. Based on the considerations discussed above and the fact that the governing law provision does not constitute a mandatory forum selection clause, Oliveira should not be dismissed from this action for forum non conveniens. "Ninth Circuit precedent requires that the court pay careful attention to whether the language in a forum selection clause is mandatory or permissive." *Glob. Concierge Holdings v. Charbo*, No. CV 13-5203-RGK MANX, 2013 WL 6241589, at *5 (C.D. Cal. Dec. 3, 2013). "The prevailing rule is . . . that where venue is specified with mandatory language the clause will be enforced. When only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive." *Id.* (quoting *Docksider, Ltd. v. Sea Technology, Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989)). However, if the forum selection language is permissive, "the clause will not preclude a party from bringing suit (or removing) elsewhere." *Id.*

Here, the forum selection clause at issue states, "This Agreement shall be construed in accordance with and governed by the laws of England and Wales and the parties submit to the exclusive jurisdiction of the Courts of England and Wales."

(Mot. 6.) The clause states that the parties "submit" to the exclusive jurisdiction of English and Welsh courts but does not specify the circumstances under which the parties must do so. The Court will not interpret this clause so broadly as to bind the parties to English and Welsh courts for any and all disputes. Thus, the Court finds that this provision is not mandatory and is merely permissive. *See Northern Cal. Dist. Council of Laborers v. Pittsburg–Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995) ("To be mandatory, a clause must contain language that clearly designates a forum as the exclusive one.") Accordingly, Wixen is permitted to submit this dispute to the courts of England and Wales, or any other court.

Aside from the governing law clause, the same considerations that support the Court's finding that exercising jurisdiction over Oliveira is reasonable support the Court's finding that California is not an inconvenient forum for Oliveira. The Court therefore **DENIES** Defendants' Motion for forum non conveniens.

## V. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendants move to dismiss all six causes of action for failure to state a claim under Rule 12(b)(6). (Mot. 7–15.) The Court addresses each claim in turn.

### A. Legal Standard

To survive a Rule 12(b)(6) dismissal, a complaint must allege facts that are sufficient to provide both "fair notice" of the particular claim being asserted and "the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007) (citation omitted). Although detailed factual allegations are not required, a complaint with "naked assertions devoid of further factual enhancement" would not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal alteration and quotation marks and citation omitted). Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (internal quotation marks and citation omitted). In determining whether a

complaint sufficiently states a claim, its allegations of material fact must be taken as true and construed in the light most favorable to the plaintiff. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Finally, where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

**B.     Discussion**

The Court finds that Wixen sufficiently pleads its first and second claims for trade secret misappropriation and denies Defendants' Motion with respect to those claims. However, the Court finds that the California Uniform Trade Secreta Act preempts the third, fourth, and fifth causes of action and dismisses these claims with leave to amend. The Court also dismisses Wixen's Sixth Claim for conspiracy to the extent it relies on now-dismissed claims, providing leave to amend.

**1.     Failure to State a Claim for Trade Secret Misappropriation (First and Second Claims)**

Wixen alleges the TEG Defendants misappropriated trade secret information in violation of the Defense of Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, and the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code section 3426. (Compl. ¶¶ 36–53.) "[T]he DTSA and the CUTSA share the same pleading requirements for the identification of trade secrets." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018). An adequate trade secret misappropriation claim must contain allegations that: (1) the plaintiff owned a trade secret, (2) that the defendant misappropriated, which (3) damaged the plaintiff. *Id.* at 877. Defendants primarily contest the first element. To adequately plead the existence of a trade secret, a plaintiff must describe the trade secret with sufficient particularity. *Cisco Systems, Inc. v. Chung* 462 F. Supp. 3d 1024, 1047 (N.D. Cal. 2020). Under both federal and state law, information qualifies as a trade secret if it derives independent economic value from not being known to others who can also

obtain economic value from the information, and the owner has "taken reasonable measures to keep such information secret." 18 U.S.C. § 1839 (3)(A)–(B); *see also* Cal. Civ. Code. § 3426.1(d)(1)–(2). Here, Defendants argue that the Court must dismiss Wixen's trade secret claims because Wixen did not adequately allege the existence of trade secrets or their independent economic values.

### *a. Wixen Alleges the Trade Secrets with Sufficient Particularity*

To sufficiently allege a trade secret, "a plaintiff need not spell out the details of the trade secret" but must 'describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade . . . and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Cisco Systems*, 462 F. Supp. 3d at 1047 (internal quotation marks omitted) (collecting cases). Here, Wixen describes its alleged trade secrets as "17 separate categories of trade secret information," (Opp'n 14), including:

> (a) the names and contact information of Wixen's clients and potential clients; (b) expiration dates of the contracts Wixen had with its clients; (c) earnings amounts of Wixen's clients' income; (d) earnings history of Wixen's clients; (e) the names of Wixen's top earnings clients; (f) Neighboring Rights Societies that Wixen collects from; (g) Wixen's collection methodology; (h) the names of Wixen's representatives at those societies; (i) Wixen's client representatives and their contact information; (j) Wixen's statement formats; (k) Wixen's programs and methodology used for e-mail statement distribution and pdf creation; (l) Wixen's vendors; (m) the names of Wixen's key employees; (n) information about the proprietary database system used by Wixen; (o) the salaries of Wixen's employees and employment terms and/or employment agreements in effect; (p) Wixen's client banking information; and (q) Wixen's unique way of paying clients

(Compl. ¶ 18.)

Defendants argue that Wixen's trade secrets are insufficiently alleged. But "[c]ourts consistently find that customer lists and customer information . . . can qualify as trade secrets." *Graduation Sols. LLC v Luya Enter. Inc.*, No. 2:19-cv-01382-DMG-JPR, 2020 WL 6738000, at *10 (C.D. Cal Sep. 11, 2020) (collecting

cases). For example, in *Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, the court found the allegations of stolen "marketing strategy, product composition, packaging and manufacturing logistics" too vague to support a trade secret claim. No. 19-cv-05611-PJH, 2020 WL 513287, at *7 (N.D. Cal. Jan. 31, 2020). The court said the plaintiff had merely "describe[d] categories of things that might contain trade secret information, rather than trade secrets themselves." *Id.* However, the court found the plaintiff nevertheless sufficiently pleaded a trade secret with its other, more specific allegations, including how plaintiff "staff[ed] its production lines, the equipment and equipment vendors it use[d], and the order of operations, machinery and live-personnel it use[d]." *Id.* Like the allegations of business operation trade secrets in *Five Star Gourmet*, here, Wixen also alleges a number of unique and proprietary aspects of its business operations, such as its methods of collecting royalties, paying clients, preparing statements for clients, and storing information. (Compl. ¶ 18). Wixen further narrowed the scope of the trade secrets as information that Oliveira allegedly "had access to and [was] in possession of." (*Id.*)

Additionally, to qualify as a trade secret, the owner must have "taken reasonable measures to keep such information secret." 18 U.S.C. § 1839 (3)(A)–(B); *see also* Cal. Civ. Code. § 3426.1(d)(1)–(2). Defendants assert that Wixen does not allege reasonable efforts to conceal its trade secrets, and in fact cannot, because the trade secrets are "known and/or readily ascertainable, not proprietary, and not maintained in secrecy sufficient to rise to the level of trade secrets." (Mot. 10.) The Court disagrees. Wixen alleges it made "reasonable efforts" to maintain the secrecy of its trade secrets, including requiring employees to sign confidentiality agreements, disclosing the trade secrets to employees only on a need-to-know basis, and password-protecting the information. (Compl. ¶ 20.) The Court finds these allegations satisfactory. At this stage in the litigation, the Court finds the trade secret pleadings are sufficiently specific.

### b. *Wixen Adequately Alleges Independent Economic Value*

"To have independent economic value, a trade secret must be sufficiently valuable and secret to afford an actual or potential economic advantage over others." *Cisco Systems*, 462 F. Supp. 3d at 1052 (citation omitted). The standard to plead independent economic value is not high. *Calendar Research LLC v. StubHub, Inc.*, No. 2:17-cv-04062-SVW-SS, 2017 WL 10378336, at *4 (C.D. Cal. Aug. 16, 2017). For example, a plaintiff claiming that "a competitor could use th[e] information to market itself more effectively" adequately pleads the independent economic value of the information. *Nelson Bros. Prof. Real Est. LLC v. Jaussi*, No. SA CV 17–0158–DOC (JCGx), 2017 WL 8220703, at *5 (C.D. Cal. Mar. 23, 2017).

Wixen defined its competitive asset by alleging its trade secrets give "Wixen an advantage in its efforts to compete in the marketplace, to secure contracts with new clients, to maintain its relationships with its existing clients . . . [and] its employees." (Compl. ¶ 38.) It is plausible that some of the alleged trade secrets, including client contact information and unique payment methods, give Wixen this economic advantage. Thus, the Court finds that Wixen adequately alleges economic value.

Defendants do not otherwise dispute that Wixen adequately alleges Defendants misappropriated the trade secrets and Wixen suffered harm from the misappropriation. Taking Wixen's factual allegations as true for the purpose of deciding the Motion, the Court finds Wixen adequately alleges claims for trade secret misappropriation, and Defendants' motion is accordingly **DENIED** as to Wixen's first and second claims.

### 2. **CUTSA Preemption of Third, Fourth, and Fifth Claims**

Defendants argue that CUTSA preempts Wixen's third claim (intentional interference with contractual relations), fourth claim (intentional interference with prospective economic advantage), and fifth claim (unfair competition) because they are based on the same nucleus of facts as the misappropriation of trade secret claims. (Mot. 12–15.) "CUTSA was enacted with . . . California's legislative intent to occupy the entire field of misappropriation of trade secrets." *MedImpact Healthcare Sys., Inc.*

*v. IQVIA Inc*, No. 19cv1865-GPC(LL), 2020 WL 5064253, at *16 (S.D. Cal. Aug. 27, 2020) (collecting cases). The statute "serves to preempt all claims premised on the wrongful taking and use of confidential business and proprietary information," regardless of whether that information is a trade secret. *Teva Pharm. USA, Inc. v. Health IQ, LLC*, No. SACV 13-00308-CJC(RNBx), 2013 WL 12132029, at *5 (C.D. Cal. Apr. 29, 2013). CUTSA preempts Wixen's common law claims to the extent they arise from the "same nucleus of facts as trade secret misappropriation." *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Ops., Inc.*, 171 Cal. App. 4th 939, 962 (2009). Thus, the Court must examine the elements and allegations for each claim and dismiss those that Wixen cannot assert without the facts supporting trade secret misappropriation. *See id.* at 959.

### a. Intentional Interference of Contractual Relations and Prospective Economic Advantage (Third and Fourth Claims)

Under California law, the elements for the tort of intentional interference with contractual relations are: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *3500 Sepulveda, LLC v. Macy's West Stores, Inc.*, 980 F.3d 1317, 1325–26 (9th Cir. 2020). "The elements of an intentional interference with prospective economic relations claim are similar. The key difference is that [this claim] only requires an economic relationship between the plaintiff and some third party," not a contract, "with the probability of future economic benefit to the plaintiff." *Calsoft Labs, Inc. v. Panchumarthi*, No. 19-cv-04398-NC, 2020 WL 512123, at *6 (N.D. Cal. Jan. 31, 2020) (citing *PG&E Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990)).

Here, Wixen identifies two parties with whom it contracted or sought to contract and with whose relations TEG Defendants' actions allegedly interfered. First, Wixen identifies the contracts between itself and the Wixen clients allegedly poached

by Defendants. (*See* Compl. ¶¶ 47, 55–57.) Wixen alleges existing clients typically renew their annual contracts, and "Defendants purposefully disrupted Wixen's relationships with its existing and potential future clients." (Compl. ¶ 66, 67.) Second, Wixen identifies the contract between itself and Oliveira. (*See id*. ¶¶ 58–63.)[2]

Thus, the same "scheme" gives rise to the interference claims and trade secret claims: TEG Defendants recruited Oliveira to breach her employment agreement, encouraged her to obtain and share confidential information, and then used that information to poach Wixen clients and assist them in terminating their contracts. The "gravamen of the wrongful conduct" for these claims is the same: the wrongful taking and use of Wixen's trade secrets. *K.C. Multimedia, Inc.*, 171 Cal. App. 4th at 96. These claims rely on the same nucleus of facts as the trade secret claims. *See K.C. Multimedia*, 171 Cal. App. at 958; *see Cisco Systems, Inc. v. Chung*, 462 F. Supp. 3d 1024, 1058–59 (N.D. Cal. 2020) (dismissing a claim of interference with contractual relations based on misappropriation of a confidential client list because plaintiff "cite[d] the same 'scheme' . . . that it proffered to support its trade secret misappropriation claims"). Wixen therefore "failed to allege an intentional interference with contract claim that arises out of a set of operative facts distinct from those relied upon to support its trade secret misappropriation claims," and CUTSA preemption applies. *Cisco Systems*, 462 F. Supp. at 1058–59; Cal. Civ. Code § 3426.1(b)(2). The Court **GRANTS** Defendants' Motion to dismiss these claims **with leave to amend** the deficiency.

### b. Unfair Competition (Fifth Claim)

California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "The UCL's coverage is broad, sweeping and embracing of anything that can be properly called a

---

[2] The Court is unpersuaded by Defendants' contention that Wixen impermissibly alleged that Oliveira interfered with her own contract. (Mot. 13–14, *referring to* Compl. ¶¶ 61–63.) In the context of the preceding allegation, a plain reading suggests that Wixen was referring to the TEG Defendants in describing the disruption with Oliveira's employment contract. (*See* Compl. ¶ 60.)

business practice and at the same time forbidden by law." *Santana v. BSI Fin. Servs., Inc.*, 495 F. Supp. 3d 926, 950 (S.D. Cal. 2020). The unfair competition claim is based on the same acts of stealing Wixen's client lists and poaching its clients. As discussed above, these actions also form the basis of Wixen's trade secrets claim. As with the contract interference claims, if the trade secrets violations are disregarded, no sufficient claim for unfair competition remains. *K.C. Multimedia*, 171 Cal. App. at 958. Thus, the unfair competition claim is preempted. The Court therefore **GRANTS** Defendants' Motion to dismiss this Claim **with leave to amend** the identified deficiency.

### 3. Dismissal of Conspiracy Claim (Sixth Claim)

Finally, Defendants seek to dismiss Wixen's conspiracy claim. "Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort." *Qwest Commc'ns Corp. v. Weisz,* 278 F. Supp. 2d 1188, 1191 (S.D. Cal. 2003) (internal quotations omitted). Thus, the Court dismisses the conspiracy claims insofar as they allege conspiracy to commit torts alleged in the now-dismissed claims. However, Wixen sufficiently alleges conspiracy claims with respect to the two remaining trade secret misappropriation claims. To allege a conspiracy, a plaintiff must allege the formation of a conspiracy, wrongful acts committed pursuant thereto, and resulting damages. *Cellular Plus, Inc. v. Sup. Ct.*, 14 Cal. App. 4th 1224, 1236 (1993). Here, Wixen alleges the TEG Defendants intentionally recruited Oliveira to share Wixen's trade secrets because they knew she worked for Wixen. (*See* Compl. ¶¶ 21, 25, 40.) This constitutes sufficient pleading of a conspiracy to steal Wixen's proprietary information.

Accordingly, the Court **DISMISSES** the conspiracy claim to the extent it is based on any dismissed claim but not to the extent it is based on the trade secret misappropriation claims, with leave to amend.

## VI. CONCLUSION

For these reasons, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. (ECF No. 16.) Wixen's third through sixth claims are **DISMISSED** with leave to amend, as described above. The motion is otherwise **DENIED**, including dismissal on the basis of lack of personal jurisdiction and forum non conveniens. If Wixen chooses to file an Amended Complaint, it shall do so within **twenty-one (21) days** of the date of this Order, in which case Defendants shall answer or otherwise respond within **fourteen (14) days** of the filing. If Wixen does not amend its Complaint, then Defendants shall answer within **fourteen (14) days** of the date the amended Complaint would have been due.

**IT IS SO ORDERED.**

December 22, 2021

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**