ANDREW S. MACKAY, #197074
amackay@donahue.com
DANIEL J. SCHACHT, #259717
dschacht@donahue.com
KATHLEEN B. FRIEND, #214593
kfriend@donahue.com
PADMINI CHERUVU, #301292
pcheruvu@donahue.com
DONAHUE FITZGERALD LLP
Attorneys at Law
1999 Harrison Street, 26th Floor
Oakland, California 94612
Telephone:  (510) 451-3300
Facsimile:   (510) 451-1527

Attorneys for Plaintiff Wixen Music UK Ltd.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| WIXEN MUSIC UK LTD., a UK limited corporation<br><br>Plaintiff,<br><br>v.<br><br>TRANSPARENCE ENTERTAINMENT GROUP INC., a California corporation; DENNIS DREITH, an individual; SHARI HOFFMAN, an individual; and TANIA OLIVEIRA, nee WOODCOCK, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:21-cv-02663-MEMF-MBKx<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Date:     September 18, 2025<br>Time:    10:00 am<br>Courtroom: 8B<br><br>Judge:  Maame Ewusi-Mensah Frimpong<br><br>Trial Date:        May 6, 2024 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 2

   I.     LEGAL STANDARD ................................................................................ 2

   II.    THE FEES SOUGHT BY WIXEN ARE REASONABLE UNDER THE LODESTAR METHOD .................................................... 3

       A.   The Amount of Hours Expended by Wixen's Counsel are Reasonable ........................................................................................ 3

       B.   Wixen's Counsel's Rates are Reasonable ..................................... 3

   III.   WIXEN IS ENTITLED TO ITS COSTS. ................................................ 6

   IV.  DEFENDANTS HAVE FAILED TO COMPLY WITH THE COURT'S CIVIL STANDING ORDER ............................................... 7

   V.   DEFENDANTS' AND THEIR COUNSEL'S UNREASONABLE AND INEFFICIENT CONDUCT INCREASED THE COST OF LITIGATION. ..................................... 11

       A.   Defendants' Unsupported Threat of Rule 11 Sanctions and a Malicious Prosecution Action ................................................. 11

       B.   Defendants' Practice of Not Complying with their Meet-and-Confer Obligations .......................................................... 12

           1.   Defendants Failed to Adequately Meet-and-Confer Before Filing their Motion to Dismiss in May 2021 ........ 12

           2.   Defendants Failed to Meet-and-Confer at All Prior to Filing their First Motion for Summary Judgment ........... 14

       C.   Defendants' Failure to Comply with Their Discovery Obligations ................................................................................. 16

           1.   Defendants Forced Wixen to Prepare a Motion to Compel Only to Moot it at the Last Minute .................... 16

           2.   Defendants Withheld Highly Relevant Documents and Violated this Court's Order to Produce Documents ..................................................................... 17

       D.   Defendants' Inefficient Actions Throughout this Action ........... 18

       E.   Defendants' Refusal to Engage in any Meaningful Settlement Discussions ............................................................. 20

       F.   Defendants' Refusal to Split Joint Costs, As Agreed ................. 21

CONCLUSION ......................................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Firefighters' Institute for Racial Equality ex rel. Anderson v. City of St. Louis,*
220 F.3d 898 (8th Cir. 2000) ........................................................................ 6

*Blum v. Stevenson,*
465 U.S. 886 (1984) ....................................................................................... 3

*City of Burlington v. Dague,*
505 U.S. 557 (1992) .................................................................................. 2, 3

*Ferland v. Conrad Credit Corp.,*
244 F.3d 1145 (9th Cir. 2001) ...................................................................... 2

*Gates v. Deukmejian,*
987 F.2d 1392 (9th Cir. 1992) ...................................................................... 4

*Hashimoto v. Dalton,*
118 F.3d 671 (9th Cir. 1997) ........................................................................ 6

*Hensley v. Eckerhart,*
461 U.S. 424 (1983) ....................................................................................... 2

*Ingram v. Oroudjian,*
647 F.3d 925 (9th Cir. 2011) ........................................................................ 4

*Morales v. City of San Rafael,*
96 F.3d 359 (9th Cir. 1996) .......................................................................... 2

*Norkunas v. HPT Cambridge, LLC,*
969 F.Supp.2d 184 (D. Mass. 2013) ............................................................. 3

*Perdue v. Kenny A. ex rel. Winn,*
559 U.S. 542 (2010) ....................................................................................... 2

*Syers Properties III, Inc. v. Rankin,*
226 Cal.App.4th 691 (Cal. 2014) . Application of the ................................. 4

*Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.,*
253 F.3d 1332 (11th Cir. 2001) ..................................................................... 3

*Van Gerwen v. Guarantee Mut. Life Co*,
    214 F.3d 1041 (9th Cir. 2000) ................................................................... 2

**Statutes**

California Uniform Trade Secret Act ......................................................... 13

**Other Authorities**

Fed. R. Civ. P. Rule 11 ................................................................. 1, 11

Fed. R. Civ. P. 54(d) ......................................................................... 6

Fed. R. Civ. P. 68 ........................................................................... 20

L.R. 7-3 ...................................................................................... 12

L.R. 16 ....................................................................................... 20

L.R. 16-2.9 ................................................................................... 20

L.R. 37-2.1 ................................................................................... 16

Plaintiff Wixen Music UK Ltd. Publishing, Inc. ("Plaintiff" or "Wixen") submits this Memorandum of Points & Authorities concerning Wixen's Motion for Attorneys' Fees and Costs.

## **<u>INTRODUCTION</u>**

Wixen respectfully moves for an award of $1,197,641 in attorneys' fees and $312,681 in costs (a total award of $1,510,322) incurred in successfully prosecuting this action. The amount sought is reasonable under the lodestar method, which serves as the guiding standard for calculating fee awards. The hours expended were necessary to achieve a favorable outcome at trial, and the rates charged are consistent with prevailing rates for complex commercial litigation in this jurisdiction.

Defendants now object to the amount of fees and costs, but they have failed to comply with the Court's Civil Standing Order governing fee motions. Specifically, Defendants did not engage in a good-faith meet and confer to attempt to reach agreement on the amount of fees, nor did they provide their portion of the required Joint Statement identifying for each time entry and cost item: the disputed amount and Defendants' specific objections. Their failure to follow these clear procedural requirements has further burdened Wixen and the Court and is a sufficient basis to deny any request to reduce the fee or cost award.

More fundamentally, Defendants' objections ring hollow in light of their own conduct throughout the litigation. From the outset, Defendants took a scorched-earth approach – issuing baseless threats of Rule 11 sanctions, denying all allegations, resisting discovery, refusing to engage in good faith settlement discussions, and forcing Wixen to litigate every issue. They repeatedly violated their meet-and-confer obligations, withheld critical documents until just before the close of discovery, and delayed their own document production well past court-ordered deadlines. At every turn, Defendants chose obstruction and inefficiency over cooperation, without regard for the resulting increase in fees and costs. Having driven up the cost of litigation

through their own tactics, Defendants now seek to avoid responsibility for the very expenses they caused, an approach that is as unreasonable as it is hypocritical.

Wixen therefore respectfully requests that the Court award the full amount of fees and costs sought, which are reasonable, well-documented, and directly attributable to the vigorous and ultimately successful prosecution of this case.

## ARGUMENT

### I.   LEGAL STANDARD

The Court has already determined that Wixen, as the prevailing party, is entitled to reasonable attorneys' fees under the DTSA and the CUTSA. Thus, all that is left for the Court to determine is the amount of attorney's fees and costs to award Wixen.

To determine a "reasonable" attorneys' fees award, courts must use the "lodestar" method. *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, n.4 (9th Cir. 2001); *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). This is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Morales*, 96 F.3d at 363. The moving party bears the initial burden of submitting evidence supporting the hours worked and the rates claimed. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Then, the court may adjust the lodestar upward or downward using a "multiplier" based on factors not subsumed in the initial calculation of the lodestar. *Van Gerwen v. Guarantee Mut. Life Co*, 214 F.3d 1041, 1045 (9th Cir. 2000). There is a strong presumption that the lodestar represents the reasonable fee. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010). Therefore, a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by specific evidence and detailed findings that the lodestar amount is unreasonably low or high. *Van Gerwen*, 214 F.3d at 1045. The party advocating a departure from the lodestar amount bears the burden of establishing that the adjustment is "necessary to the determination of a reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 561 (1992).

///

## II.    THE FEES SOUGHT BY WIXEN ARE REASONABLE UNDER THE LODESTAR METHOD

### A.    The Amount of Hours Expended by Wixen's Counsel are Reasonable

In compliance with the Section IX(E) of the Court's Civil Standing Order, Wixen's counsel has submitted detailed billing records reflecting the time spent litigating this matter over the course of more than three (3) years, including a motion to dismiss, discovery, discovery disputes, two (2) dispositive motions, pretrial preparation, trial, and post-trial briefings. (Joint Statement, Exh. A.) Additionally, these billing records specify for each attorney the date, hours spent and nature of work done. (*Id*.) The total number of hours expended was 2,786.3. (*Id*.) This number is reasonable in light of (1) the complexity and history of this trade secret misappropriation case; (2) Defendants' actions and tactics that forced Wixen to incur fees and costs that never should have been necessary, including baseless threats of sanctions, discovery misconduct, failure to comply with meet-and-confer obligations, and general inefficiency, all of which are outlined in detail in Section IV below; (3) the fact that the case proceeded through trial, where Wixen prevailed; and (4) the fact that Wixen's counsel wrote off many hours of work ($156,126 in fees, for which Wixen is not seeking reimbursement). (Declaration of Daniel J. Schacht in Support of Plaintiff's Motion for Attorneys' Fees and Costs ("Schacht Decl."), Exh. K.) Wixen has satisfied its burden of establishing the hours expended in this litigation.

### B.    Wixen's Counsel's Rates are Reasonable

In determining a reasonable rate for the attorney's service, courts usually consider (1) the prevailing rate charged by attorneys of similar skill and experience for comparable legal services in the community; (2) the nature and complexity of the work performed; and (3) the attorney's customary fee. *Blum v. Stevenson*, 465 U.S. 886, 896 (1984); *Norkunas v. HPT Cambridge, LLC*, 969 F.Supp.2d 184, 197-98 (D. Mass. 2013); *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1337

(11th Cir. 2001). Judge's may also rely on their own familiarity with the legal market, their knowledge of customary rates, and their experience concerning reasonable and appropriate fees. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). Court look to the rates in effect at the time of the prevailing party's fee application rather than rates charged when the litigation began. *Gates v. Deukmejian*, 987 F.2d 1392, 1406 (9th Cir. 1992).

Here, all the rates charged by Wixen's counsel were significantly lower than the reasonable rates set forth in the "Fitzpatrick Matrix" (the updated version of what was formerly referred to as the *Laffey* Matrix).[1] The *Laffey* Matrix has been accepted for use in California federal and state courts, which have approved upward adjustments of the rates in the Matrix for cases based on locality pay differentials. *See e.g.*, *Syers Properties III, Inc. v. Rankin*, 226 Cal.App.4th 691 (Cal. 2014) (approving use of Matrix and discussing upward adjustment of rates for the San Francisco Bay Area in *Laffey* Matrix by Chief Judge Walker in *In re HPL Technologies, Inc. Securities Litigation*, 366 F.Supp.2d 912, 922, n.1 (N.D. Cal. 2005)). Application of the same formula provided an approximately 1.89% upward rate in the Los Angeles area.[2] Applying this methodology to this case yields the following reasonable rate analysis for the attorneys involved in this case:

| Attorney | Billed Rate | Fitzpatrick Matrix Rate | 1.89% Upward Adjustment |
|---|---|---|---|
| Andrew S. MacKay (22+ years' experience in 2021) | $560 | $684 | $697.13 (24.45% higher than rate billed) |
| Andrew S. MacKay (23+ years' experience in 2022) | $590 | $714 | $727.71 (23.3% higher than rate billed) |

[1] The current Fitzpatrick Matrix can be found here: https://www.justice.gov/usao-dc/media/1395096/dl?inline.

[2] https://www.uscourts.gov/careers/compensation/judiciary-salary-plan-pay-rates

| Attorney | Billed Rate | Fitzpatrick Matrix Rate | 1.89% Upward Adjustment |
|---|---|---|---|
| Andrew S. MacKay (24+ years' experience in 2023) | $640 | $765 | $779.69 (21.79% higher than rate billed) |
| Andrew S. MacKay (25+ years' experience in 2024) | $680 (for a portion of the year) $550 (for the remainder of the year) | $826 | $841.86 (23.77% and 53.02% higher than rates billed) |
| Andrew S. MacKay (26+ years' experience in 2025) | $550 | $897 | $914.22 (66.17% higher than rate billed) |
| Daniel J. Schacht (15+ years' experience in 2024) | $550 | $736 | $750.13 (36.35% higher than rate billed) |
| Daniel J. Schacht (16+ years' experience in 2025) | $550 | $806 | $821.48 (49.32% higher than rate billed) |
| Kathleen B. Friend (19+ years' experience in 2021) | $400 | $662 | $674.71 (68.63% higher than rate billed) |
| Kathleen B. Friend (22+ years' experience in 2024) | $510 | $804 | $819.44 (60.63% higher than rate billed) |
| Kathleen B. Friend (23+ years' experience in 2025) | $550 | $877 | $893.84 (62.47% higher than rate billed) |
| Mario M. Choi (15+ years' experience in 2022) | $420 | $647 | $659.42 (56.96% higher than rate billed) |
| Mario M. Choi (16+ years' experience in 2023) | $505 | $697 | $710.38 (40.63% higher than rate billed) |
| Mario M. Choi (17+ years' experience in 2024) | $550 | $757 | $771.53 (40.24% higher than rate billed) |

| Attorney | Billed Rate | Fitzpatrick Matrix Rate | 1.89% Upward Adjustment |
|---|---|---|---|
| Padmini Cheruvu (6+ years' experience in 2021) | $340 | $518 | $527.95 (55.23% higher than rate billed) |
| Padmini Cheruvu (7+ years' experience in 2022) | $360 | $550 | $560.56 (55.67% higher than rate billed) |
| Padmini Cheruvu (8+ years' experience in 2023) | $425 | $598 | $609.48 (43.37% higher than rate billed) |
| Padmini Cheruvu (9+ years' experience in 2024) | $460 | $655 | $667.58 (45.08% higher than rate billed) |
| Padmini Cheruvu (10+ years' experience in 2025) | $505 | $723 | $736.88 (45.87% higher than rate billed) |

(Schacht Decl., Exh. B.)

This rate analysis establishes that the fees actually charged to and paid by Wixen, and claimed in this Motion were reasonable. Additionally, two (2) of the attorneys on this case reduced their hourly rates, resulting in a total discount of $101,959 in fees, for which Wixen is not seeking reimbursement. (Schacht Decl., ¶ 17, Exh. L.)

## III.    WIXEN IS ENTITLED TO ITS COSTS.

"Unless a federal statute, these rules, or a court order provide otherwise, costs – other than attorney's fees, should be allowed to the prevailing party." Fed. Rule of Civ. P. 54(d). The "prevailing party" for costs awards purposes is the party who prevails on a substantial part of the litigation. (*Id.*) If judgment is entered in one party's favor, that party is the prevailing party regardless of the amount of damages awarded. *Firefighters' Institute for Racial Equality ex rel. Anderson v. City of St. Louis*, 220 F.3d 898, 905 (8th Cir. 2000). Therefore, a party does not need to prevail on every issue, or even on the central issue in the case to be a prevailing party. *Hashimoto v. Dalton*, 118 F.3d 671, 677 (9th Cir. 1997).

It is clear that Wixen is the prevailing party in this litigation since the jury returned a verdict in Wixen's favor for both the trade secret misappropriation claims. Therefore, Wixen is entitled to a cost award in this matter. In compliance with Section IX(E), Wixen's counsel has submitted evidence of the actual cost of all nontaxable expenses sought in this Motion. (Schacht Decl., Exh. F.) Wixen has satisfied its burden of establishing the costs it incurred in this litigation.

## IV.    DEFENDANTS HAVE FAILED TO COMPLY WITH THE COURT'S CIVIL STANDING ORDER

On February 20, 2025, the schedule outlined below was set by the Court for the parties' meet-and-confer requirements related to this Motion. (ECF No. 338.)

| Description | Date |
|---|---|
| Last day for Plaintiff to provide Defendants with a draft of its portion of a Joint Statement, spreadsheets for fees and costs, billing records and other evidence supporting its claim for fees and costs, as required by the Court's Civil Standing Order | 2/14/2025 |
| Last day for the parties to meet and confer | 3/4/2025 |
| Last day for Plaintiff to circulate final version of its portion of the Joint Statement | 3/14/2025 |
| Last day for Defendants to provide Plaintiff with their portion(s) of the Joint Statement | 3/28/2025 |

Section IX(E) of the Court's Civil Standing Order requires that, prior to submission of a motion for attorneys' fees, the parties should meet-and-confer to attempt in good faith to agree on the reasonably amount of fees to be awarded. As part of this meet-and-confer process, the moving party must (1) provide opposing counsel with the billing records on which the motion will be based; (2) inform opposing counsel of the hourly rates that will be claimed for each timekeeper on the matter; (3) provide the actual cost of any nontaxable expenses to be sought by the motion; and (4) respond to any reasonable request for additional documentation or information.

///

If, through the meet-and-confer process, the parties are unable to agree on the amount of fees to be awarded, a Joint Statement must be submitted to the Court regarding the fees and costs sought. Section IX(E) of the Court's Civil Standing Order outlines specific requirements for the Joint Statement.

> The Joint Statement must be formatted as a spreadsheet in Microsoft Excel. The spreadsheet must include columns to identify: (1) the date of each time entry; (2) the biller for each time entry; (3) a brief description of the task; (4) the number of hours requested by the moving party for the task; (5) the number of hours, if any, opposing party believes should be awarded for the task; and for disputed items (6) a brief summary of moving party's position; and (7) a brief summary of opposing party's position.

Pursuant to the Court's rules, prior to the meet and confer, Wixen provided Defendants with comprehensive documentation in support of its fee and cost request on February 14, 2025. (Schacht Decl., ¶ 3, Exhs. A-C, F.) This documentation included:

1. A detailed cover letter outlining the hourly rates for each timekeeper and requesting the total amount of fees Defendants believed were properly charged;

2. An Excel spreadsheet listing every time entry for which Wixen seeks reimbursement (over 2,500 entries), spanning the entire litigation from March 2021 to January 2025;

3. Wixen's counsel's rate sheets for the years during which this action was litigated and which shows the standard rates billed to clients;

4. Redacted invoices from other matters, demonstrating the actual hourly rates charged to clients in similar cases during the relevant time period; and

5. An Excel spreadsheet detailing all nontaxable expenses sought (nearly 150 entries), including sufficient description for review.

(*Id.*)

Defendants responded on March 3, 2025 that "[i]t is not feasible . . . to respond to the statement of legal activities line-by-line," even though that is what is required

by Section IX(E) of the Court's Civil Standing Order if there are entries to which Defendants are objecting. (Schacht Decl., ¶ 9, Exh. G.) Instead, Defendants provided fifteen (15) general comments to the spreadsheets. (*Id*.) The following day, on March 4, 2025, the parties held a Zoom meet-and-confer to discuss the issues in this Motion. (*Id*., ¶ 10.) Defendants agreed to provide specific comments regarding the spreadsheets of fees and costs no later than March 7, 2025. (*Id*.) Defendants requested additional documentation, including the underlying invoices and receipts supporting Wixen's fees and costs. (*Id*., ¶ 11.) Wixen provided the requested documents on March 14, 2025. (*Id*., Exh. H.)

On March 7, 2025, however, rather than providing the specific line-by-line input into the spreadsheets as required by Section IX(E) of the Court's Civil Standing Order, Defendants declared that "[t]here is no point in . . . commenting on each line item," instead offering only four broad categories of objection, challenging time generally related to: (1) the drafting of the complaint; (2) evidence preservation letters; (3) opposition to the motion to dismiss, and (4) all time related to motions for summary judgment. (Schacht Decl., ¶ 12, Exh. G.) Defendants made no attempt to identify disputed time entries by date or description and provided no spreadsheet response.

On March 14, 2025, in compliance with the Court's deadline for Wixen to circulate a final version of its portion of the Joint Statement, Wixen's counsel emailed to Defendants updated costs and fees spreadsheets (the "Fees and Costs Spreadsheets"), containing only minor changes from the versions previously provided to Defendants. (Schacht Decl., Exh. H.)

Despite the March 28, 2025 deadline for Defendants to provide Wixen with their portions of the Joint Statement, Defendants never provided the Excel Joint Statement required by the Court. Instead, they submitted only a 10-page pdf document

on March 31, 2025, which merely reiterated their general objections.[3] (Schacht Decl., ¶ 14, Exh. I-J.) Notably, the response did not include any objections or responses to Wixen's request for costs.[4] (*Id*.) Despite Wixen's follow-up email of April 1, 2025 confirming the absence of Defendants' spreadsheet Defendants have never provided the Joint Statement with itemized objections and reasons for the objections required by the Court. (*Id*.) Follow-up emails from Defendants on April 10, 2025 also failed to include the spreadsheet or any itemized objections. (*Id*., ¶¶ 14-15, Exh. I.) As a result, Wixen was unable to complete the Joint Statement as contemplated by the Court.

Defendants' conduct is a clear violation of the Court's Civil Standing Order, which requires (1) a good faith meet-and-confer to attempt to agree on a reasonably amount of fees to be awarded; and (2) preparation of a joint Excel spreadsheet identifying for each time entry and cost item: the disputed amount and Defendants' specific objections. Despite an initial promise to provide specific comments on each spreadsheet entry by March 7, 2025, Defendants refused to undertake the required process on the grounds that it was "too labor-intensive." (Schacht Decl., ¶¶ 10, 12, Exh. G.) Defendants' refusal to comply with the procedural rules subverts the purpose of the meet-and-confer process and effectively precludes Wixen from narrowing or resolving any disputes through discussion, leaving the Court to adjudicate the entire fee request without the benefit of meaningful opposition on a line-by-line basis.

Given Defendants' refusal to engage with the required process, their failure to produce the mandated Joint Statement, and their blanket objections without specificity, Wixen respectfully requests that the Court award the full amount of fees

---

[3] On March 27, 2025, Defendants requested an additional business day to provide their response to the Joint Statement, which Wixen granted. (Schacht Decl., ¶ 14.)

[4] Defendants' March 31, 2025 response stated that "Plaintiff [sic] will discuss the cost requests in a separate document that will be forthcoming." Defendants mistakenly wrote Plaintiff instead of Defendants in this document. Defendants provided their untimely response to the cost requests on April 10, 2025. (Schacht Decl., Exh. J.)

and costs sought in this Motion. Defendants' failure to comply with the Court's rules should not prejudice Wixen, who made every effort to comply with the Court's rules.

## V. DEFENDANTS' AND THEIR COUNSEL'S UNREASONABLE AND INEFFICIENT CONDUCT INCREASED THE COST OF LITIGATION.

### A. Defendants' Unsupported Threat of Rule 11 Sanctions and a Malicious Prosecution Action

Defendants' first action in this case was to send a letter to Wixen's counsel on May 4, 2021 threatening Rule 11 sanctions and a malicious prosecution action. (Declaration of Padmini Cheruvu in Support of Plaintiff's Motion for Attorneys' Fees and Costs ("Cheruvu Decl."), Exh. A.) The letter baselessly claimed that the Court lacked personal jurisdiction over Ms. Woodcock, and that Wixen's trade secret misappropriation claim lacked merit because Wixen has no trade secrets and, even if it did, there was no evidence that Defendants misappropriated Wixen's trade secrets. (*Id.*) The letter argued that Wixen was bringing its claims solely in bath faith and for the purpose of smearing Defendants' reputations and damaging their business. (*Id.*) Defendants, ironically, ended the letter with a demand that Wixen dismiss with prejudice all claims otherwise Defendants would "take all action available . . . including without limitation seeking recovery of ***all attorneys' fees and costs*** that might be incurred by [Defendants] in defending against this unfounded action." (*Id.*)

The Court later denied Defendants' motion to dismiss for lack of personal jurisdiction against Ms. Woodcock, and the jury ultimately found in Wixen's favor on the trade secret misappropriation claims. (ECF No. 22.) Defendants' aggressive and unfounded threats at the outset of the case forced Wixen to devote time and resources to defend the legitimacy of its claims and venue, directly and unnecessarily increasing the fees now at issue. (Cheruvu Decl., Exh. B.) Just like Defendants planned to seek recovery of all of their attorneys' fees and costs if they had prevailed at trial, Wixen is entitled to recovery of all its attorneys' fees and costs incurred in prosecuting this action.

## B.    Defendants' Practice of Not Complying with their Meet-and-Confer Obligations[5]

Central District of California Local Rule 7-3 requires the parties to meet-and-confer at least seven (7) days prior to the filing of any motion. This conference encourages the parties to clarify issues, potentially resolve disputes without court intervention, and narrow the scope of any anticipated motion, all for the purpose of conserving both judicial and party resources. Defendants' practice throughout this litigation has been to disregard this obligation entirely, or initiate a last-minute conference that does not allow for substantive discussion or resolution of the issues merely to check a procedural box. This pattern reflects Defendants' practice of treating the meet-and-confer requirement as a mere formality, rather than engaging in the good-faith effort the rule is designed to ensure. Additionally, this approach forced unnecessary briefing and court involvement, driving up litigation costs. Hypocritically, Defendants showed no regard for the added expense their conduct imposed on the parties when failing to comply with the Court's rules, yet now complain about excessive fees incurred by Wixen in responding to Defendants' meritless motions that could have been avoided or narrowed if Defendants had complied with their meet-and-confer obligations. For this reason, Defendants' arguments and objections to Wixen's fees and costs should be disregarded.

### 1.    Defendants Failed to Adequately Meet-and-Confer Before Filing their Motion to Dismiss in May 2021

The first time Defendants notified Wixen about their planned Motion to Dismiss was through a meet-and-confer letter sent on May 12, 2021 at 5:46 pm, the day before Defendants' May 20, 2021 deadline to meet-and-confer with Wixen prior to filing the motion. (Cheruvu Decl., ¶ 5, Exh. C.) The letter raised the following

---

[5] Defendants' failure to properly meet-and-confer regarding this Motion is addressed in Section III above, and therefore is not reiterated here.

arguments: (1) Wixen has no personal jurisdiction over Ms. Woodcock, which was incorrect and which the Court ultimately disagreed with; (2) Wixen's claim for intentional interference with contractual relations alleges that Ms. Woodcock interfered with her own employment contract with Wixen (this was incorrect on its face); and (3) the interference with prospective economic advantage does not specifically state every third party with whom Wixen had an economic relationship (which was not required). (*Id*.) Despite the last-minute request to meet-and-confer, Wixen's counsel complied and met-and-conferred on May 13, 2021. (*Id*., ¶ 6.) The parties were unable to resolve the issues raised by Defendants in the meet-and-confer letter and Defendants proceeded with filing the Motion. (*Id*.)

Ultimately, the Court granted in part and denied in part Defendants' Motion to Dismiss. (ECF No. 22.) On the most important issue – Wixen's trade secret misappropriation claims – the Court agreed with Wixen that it had properly alleged a claim, and therefore denied Defendants' Motion to Dismiss. (*Id*.) As to the intentional interference with contractual relations, intentional interference with prospective economic advantage, and unfair competition claims, the Court determined that they were preempted by the California Uniform Trade Secret Act and granted the motion as to those claims. (*Id*.) As to the conspiracy claim, the Court denied the motion as it related to Wixen's trade secret misappropriation claims and granted it in part as it related to any other claim that was dismissed due to preemption. (*Id*.)

Defendants' partial success was solely based on a preemption argument, which Defendants failed to raise during the parties' eleventh hour meet-and-confer phone call. (Cheruvu Decl., ¶ 6.) Had Defendants properly raised this issue during the parties' meet-and-confer phone call, Wixen may have voluntarily dismissed claims or amended the Complaint to address the issues raised in the Motion to Dismiss, saving Wixen the time and expense of opposing the motion and attending the hearing. However, as shown by Defendants' last-minute request for a meet-and-confer

conference, Defendants were clearly not prepared to substantively meet-and-confer during the May 13, 2021 conference.

Defendants now dispute the amount of time spent drafting the opposition to Defendants' Motion to Dismiss, which they claim was 55 hours. A review of Wixen's portion of the Joint Statement shows that the time spent drafting the opposition and related papers was closer to 40 hours. (Joint Statement, Exh. A.) Nevertheless, the time was reasonably spent given the scope and complexity of the issues presented regarding jurisdiction and intellectual property issues, and Wixen's success, especially considering Defendants' failure to properly meet-and-confer prior to filing the motion.

### 2. Defendants Failed to Meet-and-Confer at All Prior to Filing their First Motion for Summary Judgment

Defendants first notified Wixen of their first Motion for Summary Judgment ("MSJ") by serving the motion on December 22, 2022. (Cheruvu Decl., ¶ 10, Exh. E.) In that service email, Defendants' counsel disingenuously claimed that they had tried to meet-and-confer with Wixen's counsel about the motion several times but received no response. (*Id*.) The truth was that Defendants made no effort to meet-and-confer with Wixen before making the motion. (*Id*.) At 8:18 pm the night before Defendants' deadline to file their MSJ, Defendants emailed Wixen's counsel requesting a call to discuss "the case overall and whether [the parties] can find a resolution." (Declaration of Andrew S. MacKay in Support of Plaintiff's Motion for Attorneys' Fees and Costs ("MacKay Decl."), ¶ 5.) At 11:04 am and again at 11:11 am on the morning that Defendants served their MSJ, Defendants' counsel left voicemails for Wixen's counsel requesting a call to discuss the case overall. (*Id*., ¶ 6; Cheruvu Decl., ¶ 12.) In none of Defendants' counsel's email or voicemails, or even during a call between counsel on December 20, 2022 regarding other matters, did Defendants request a meet-and-confer to discuss the MSJ. (MacKay Decl., ¶ 6; Cheruvu Decl., ¶ 12.)

///

Due to Defendants' failure to meet-and-confer, the Court denied without prejudice Defendants' first MSJ and amended the schedule for the case to allow Defendants to file a second MSJ regarding the same issues. (ECF No. 67.) As a result, Wixen had to incur the expense of responding to not one (1), but two (2) MSJs, including appearing for two (2) motion hearings. This included filing two (2) Motions to Seal to protect Wixen's trade secret information.[6] (Cheruvu Decl., ¶ 28.)

In both MSJs that they filed, Defendants also ignored Section IX(D) of the Court's Civil Standing Order, while Wixen incurred substantial cost to comply with the same. Section IX(D) states that "the non-moving party shall provide the moving party with an electronic copy of the integrated motion, which shall include the opposing party's portion of the joint brief, together with the opposing party's portion of the evidentiary appendix and joint appendix of undisputed and disputed facts." Accordingly, Wixen provided Defendants with fully integrated documents. (Cheruvu Decl. ¶ 13.) Section IX(D) of the Court's Civil Standing Order also states that "the moving party shall integrate their reply arguments into the joint brief and file it with the Court." Defendants ignored this rule and simply included their reply brief at the end of each MSJ. (ECF Nos. 53, 77.) Additionally and even though Defendants were the moving parties, due to counsel's inaction, the burden of integrating the motion documents other than the reply brief for both rounds of MSJs fell on Wixen, for which Wixen incurred extra fees. (*Id*., ¶ 14, Exh. F.)

Defendants now assert that the time spent by Wixen successfully opposing Defendants' two (2) MSJs is excessive. In reality, Defendants' procedural failings necessitated additional work by Wixen's counsel, justifying the fees claimed.

///

---

[6] Wixen notes that due to the highly confidential nature of its trade secrets, many of the motion practice in the case, all of which were incurred due to Defendants' actions, required the parties to file documents under seal. (Cheruvu Decl., ¶ 28.) Wixen took on the burden and expense of preparing and filing all of the Motions to Seal. (*Id*.)

## C.    Defendants' Failure to Comply with Their Discovery Obligations

### 1.    Defendants Forced Wixen to Prepare a Motion to Compel Only to Moot it at the Last Minute

On December 16, 2022, Wixen's counsel sent a meet-and-confer letter to Defendants' counsel regarding their deficient discovery responses and document production, stating that Defendants had failed to produce all responsive documents in their possession, custody, or control, despite agreeing to do so. (Cheruvu Decl., ¶ 7, Exh. D.) The letter also emphasized that, due to Defendants' minor productions to date, Wixen did not believe that Defendants had implemented the specific process agreed upon by the parties to search for responsive documents, *i.e.*, to (1) identify custodian(s), search terms, and the relevant time period; (2) gather all documents from each custodian such as through .pst files, apply the search terms to the custodians' documents, and produce the hit reports to each side; (3) if the hit reports were high, discuss how to narrow the search terms to decrease the burden; and (4) after the documents were narrowed to a reasonable set, review the narrowed set for responsive documents and produce them. (*Id.*)

The parties met-and-conferred timely on December 27, 2022 regarding this discovery dispute, and Defendants represented that they had followed the agreed upon procedure for collecting and reviewing documents. (Cheruvu Decl., ¶ 15, Exh. J.) Defendants agreed to search for and produce all remaining, responsive documents no later than January 3, 2023, but failed to do so. (*Id.*) Therefore, Wixen was forced to prepare a Motion to Compel. (*Id.*) Pursuant to Civil Local Rule 37-2.1, a Joint Stipulation is required to be submitted for Motions to Compel. Wixen prepared its portion of the Joint Stipulation and provided it to Defendants on January 4, 2023. (*Id.*, Exh. G.) January 11, 2023 was Defendants' deadline to provide its portion of the Joint Stipulation. (*Id.*, ¶ 16.) On that day, Defendants instead served supplemental discovery responses declaring under penalty of perjury that they had produced all responsive documents to the identified requests. (*Id.*, ¶ 16, Exh. H.) On January 11,

2023, Defendants also provided its portion of the Joint Stipulation relying on its supplemental discovery responses to argue that all documents had been produced. (*Id.*, ¶ 17, Exh. I.) Rather than search for responsive documents as promised during the December 27, 2022 call, Defendants forced Wixen to prepare a Motion to Compel only to moot the motion the day their portion of the Joint Stipulation was due.[7] (*Id.*, ¶ 18.) Defendants simply continued its pattern and practice of failing to engage in a good-faith effort to meet-and-confer and resolve disputes, forcing Wixen to incur additional fees.

### 2. Defendants Withheld Highly Relevant Documents and Violated this Court's Order to Produce Documents

Despite Defendants' January 11, 2023 supplemental responses in which Defendants stated under penalty of perjury that they had complied with the parties' agreed-upon process for searching for documents, and that they had produced all non-privileged, responsive documents in their possession, custody, or control, Wixen later learned through third-party discovery that highly relevant documents were missing from Defendants' document productions, calling into question the credibility of Defendants' claims that they properly searched for and produced all responsive, nonprivileged documents. (Cheruvu Decl., ¶ 19, Exh. J.)

Due to the discovery of missing documents, Wixen's counsel sent another meet-and-confer letter to Defendants' counsel on February 3, 2023 regarding Defendants' document production. (Cheruvu Decl., ¶ 19, Exh. J.) Over the course of the next several months, the parties had multiple meet-and-confer phone calls regarding the issue, during which Defendants' counsel stated that they were working on gathering, reviewing and producing documents in accordance with the parties'

---

[7] The Motion to Compel was mooted by Defendants' January 11, 2023 supplemental responses and, therefore Plaintiff did not file the prepared Joint Stipulation on January 12, 2023. (Cheruvu Decl., ¶ 18.)

agreed upon procedure. (*Id.*, ¶ 20.) Defendants agreed to this on April 4, 2023 ("Defendants' Promise to Produce Documents"), but by May 8, 2023 still had not completed their documents productions. (*Id.*, ¶¶ 20-21.) Therefore, Wixen's counsel sent another meet-and-confer letter regarding the issue on May 8, 2023, requesting the documents be produced by May 21, 2023. (*Id.*, ¶ 21, Exh. K.) Defendants failed to complete their document production by that date. (*Id.*, ¶ 21.)

To avoid motion practice, the parties entered into a Stipulation, which included Defendants' Promise to Produce Documents and an agreement to do so by June 20, 2023. (Cheruvu Decl., ¶ 22.) The Court entered the Stipulation on June 9, 2023. (ECF No. 74.) Despite the Court's order for Defendants to complete their document production by June 20, Defendants did not complete their documents production until July 10, 2023, two (2) days before the July 12, 2023 discovery cutoff. (*Id.*, ¶ 23, Exh. L.)

Defendants' discovery misconduct significantly increased Wixen's litigation costs. Wixen was forced to expend considerable time and resources addressing avoidable issues, including preparing its portion of the aforementioned Joint Stipulation; preparing meet-and-confer correspondence; participating in multiple meet-and-confer phone calls; conducting third-party discovery; preparing and submitting a stipulation; and following up on Defendants' noncompliance – all of which directly contributed to the attorneys' fees now being challenged.

In contrast, Wixen complied with its discovery obligations in full, producing 37,838 pages of documents. (Cheruvu Decl., ¶ 24.) There were no discovery disputes regarding Wixen's discovery responses and document productions, saving the parties and the Court time and money. (*Id.*)

### D.    Defendants' Inefficient Actions Throughout this Action

Defendant TEG designated Mr. Dreith to testify on its behalf. (Cheruvu Decl., ¶ 25.) Rather than allow Mr. Dreith to be deposed simultaneously in his individual capacity and on behalf of TEG, Defendants insisted that Wixen depose him under

1    each capacity separately. (*Id.*) This resulted in Wixen having to complete two (2)

2    depositions of Mr. Dreith, forcing Wixen to incur additional fees and costs. (*Id.*) In

3    contrast, Wixen allowed Defendants to simultaneously depose Mr. Wixen on behalf

4    of Wixen and in his individual capacity. (*Id.*, ¶ 26.) Unfortunately, Defendants again

5    wasted time, and cost the parties additional fees by reserving a room for Mr. Wixen's

6    deposition without realizing that the building closed at 5:00 pm. (MacKay Decl., ¶ 7,

7    Exh. B.) As a result of Defendants' lack of organization, the parties had to return for

8    another day to complete Mr. Wixen's deposition. (*Id.*) This resulted in additional fees

9    to Wixen.

10       When preparing joint pre-trial documents, the parties completed several meet-

11   and-confer phone calls. (Cheruvu Decl., ¶ 27.) Sufficiently in advance of the calls,

12   Wixen's counsel provided Defendants' counsel with drafts of the joint documents.

13   (*Id.*) Rather than review, analyze and prepare edits of the drafts prior to the meet-and-

14   confer calls, Defendants' counsel reviewed the joint documents during each call,

15   forcing Wixen's counsel to sit through Defendants' counsel's live review of, analysis,

16   and response to each item. (*Id.*) This was a tedious, time-consuming, and inefficient

17   process. (*Id.*) Defendants could have and should have done this on their own time,

18   rather than force Wixen to incur additional and unnecessary costs.

19       At trial, both parties were allotted a certain amount of time to present their

20   case/defense. On the last day of trial, Defendants requested additional time to present

21   their defense. (Schacht Decl., Exh. N.) In response to Defendants' request, the Court

22   responded as follows:

23           the Court has been watching the time and telling the parties
             the time every day and each party made decisions about
24           how they were going to use their time, and the Court does
             not find that the way that defense counsel has used its time
25           is sufficient -- it demonstrates a use of diligence of the time
             that defense counsel should get additional time. There were
26           some examinations that defense spent a long time on, the
             topics that are not core to the case, and I think defense
27           counsel -- a number of his lay witnesses gave very long
             answers that were not at the heart of the issues here in this
28           case[.]

1    (*Id.*) It is clear that Defendants' lack of efficiency prolonged the trial, costing Wixen

2    additional and unnecessary fees.

3    **E.    Defendants' Refusal to Engage in any Meaningful Settlement**

4    **Discussions**

5    While Wixen made multiple attempts to resolve this case and avoid the expense

6    of litigation, Defendants never engaged in settlement discussions in any meaningful

7    or good faith fashion. On December 14, 2022, the parties attended a mediation but

8    were unable to settle the matter. (MacKay Decl., ¶ 8.) On February 2, 2023, Wixen's

9    counsel proposed another settlement offer. (*Id.*) Defendants' counsel stated that he

10   would discuss with his clients, but never provided a response. (*Id.*) On June 26, 2023,

11   Wixen sent a settlement letter to Defendants and proposed a third settlement offer.

12   Defendants did not respond to the letter or settlement offer. (*Id.*)

13   On November 21, 2023, the parties met-and-conferred pursuant to Local Rule

14   16, which included exhausting all possibilities of settlement. (MacKay Decl., ¶ 9.)

15   During the conference, Defendants' counsel (1) finally provided a response to

16   Wixen's multiple settlement offers, stating that they were rejected; and (2) stated that

17   he would discuss with his clients about whether Defendants planned to present any

18   settlement offer. (*Id.*) Tellingly, December 6, 2023, in a Joint Status Report Regarding

19   Settlement pursuant to Local Rule 16-2.9, "Defendants confirmed that they do not

20   intend to present an offer to settle this case." (ECF No. 109.) Additionally, Defendants

21   never served a Rule 68 Offer of Judgment. (MacKay Decl., ¶ 10.)

22   Defendants were clear during this entire action that they were not willing to

23   settle, taking the position that Wixen's claims were meritless. This forced Wixen to

24   proceed with trial and incur a substantial amount of fees and costs to obtain a

25   judgment against Defendants. The entire trial might have been avoided if Defendants

26   had made a good faith attempt to resolve this dispute.

27   ///

28   ///

### F.    Defendants' Refusal to Split Joint Costs, As Agreed

When preparing for trial, the parties agreed to an approach to deal with trade secret information at trial and agreed to evenly split the costs of printing exhibit binders. (Schacht Decl., ¶ 18.) The agreed-upon approach involved three different sets of binders (redacted, unredacted, and redacted sections visible but outlined in red). (*Id.*) This proved rather costly because it required three (3) sets, one of which included color printing – $19,255.60 in total. (*Id.*) At trial, however, Defendants' counsel successfully objected to using these exhibit sets. And after this wasteful approach, Defendants *refused to pay any portion of the vendor fees*. (*Id.*, ¶ 18, Exh. M.) Given the significant impact on the family-owned and operated vendor of such a large unpaid balance, Wixen agreed to pay Defendants' unpaid half and take the risk of recovering those costs from Defendants. (*Id.*, ¶ 18.)

## CONCLUSION

For all the reasons stated herein, Wixen respectfully requests that the Court grant its Motion for Attorneys' Fees and Costs and award it $1,197,641 in fees and $312,681 in costs (a total award of $1,510,322).

Dated:  June 20, 2025              DONAHUE FITZGERALD LLP
                                   Attorneys at Law


                            By:  _____/s/Daniel J. Schacht_____
                                   Andrew S. MacKay
                                   Daniel J. Schacht
                                   Kathleen B. Friend
                                   Padmini Cheruvu
                                   Attorneys for Plaintiff Wixen Music UK
                                   Ltd.

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Wixen Music UK Ltd., certifies that this brief contains 6,428 words, which:

☒ complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated _____.

DATED: June 20, 2025

*/s/ Daniel J. Schacht*

_____
Daniel J. Schacht
Attorneys for Plaintiff Wixen Music
UK Ltd.